Robert D. Stone, *Esq.*
LAW OFFICE OF ROBERT STONE, LLC
1049 West 5th Avenue, Suite 102
Anchorage, Alaska 99501
(907) 276-4190 Phone
(907) 276-4140 Fax
marysummers@stonelawalaska.com


IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF ALASKA


| | | |
|---|---|---|
| KAREN SEEKATZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| METROPOLITAN LIFE INSURANCE | ) | |
| COMPANY, | ) | Case No. _____ |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |


## **COMPLAINT**

Plaintiff Karen Seekatz, by and through her counsel of record, LAW OFFICE OF ROBERT

STONE, LLC, and for her Complaint against Defendant Metropolitan Life Insurance Company,

states and alleges as follows:

## **PARTIES**

1.      Plaintiff Karen Seekatz is a resident of the State of Alaska and was at all times

pertinent hereto.

2.      Upon information and belief, Defendant Metropolitan Life Insurance is a corporate resident of New York City, New York, with corporate headquarters at 1095 Avenue of the Americas, New York, New York 10036.

3.      At all times relevant to this litigation, Plaintiff Karen Seekatz was an insured under a Metropolitan Life Insurance (hereinafter "MetLife") policy.

4.      The MetLife policy at issue provided $250,000 in life insurance coverage benefits on Plaintiff's spouse, Matt Seekatz.

5.      The MetLife life insurance policy was purchased, and premiums were paid, through the BP Corporation Plan, which is an employee welfare benefit plan regulated by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§1001-1461 ("ERISA").

6.      MetLife served as claims fiduciary and administered claims.

7.      MetLife conducts business within the State of Alaska.

8.      MetLife conducted business with Plaintiff within the State of Alaska.

9.      Plaintiff's employment was within the State of Alaska.

10.     The MetLife policy was provided as a benefit of Plaintiff's employment, which was in Alaska.

## JURISDICTION AND VENUE

11.     Federal question arises under the Employee Retirement Income Security Act ("ERISA") and, therefore, fulfills 28 U.S.C. 1331.

12.     Plaintiff seeks payment of $250,000 in life insurance benefits under the MetLife policy.

13.     All parties are diverse and the amount in controversy exceeds $75,000. Accordingly, independently there exists jurisdiction pursuant to 28 U. S.C 1332.

14.     The Court has subject matter jurisdiction.

15.     The Court has personal jurisdiction.

16.     Venue in the United States District Court for the District of Alaska is proper.

## FACTUAL BASIS FOR COMPLAINT

17.     Plaintiff began working for British Petroleum ("BP") on August 29, 2011. Soon after her employment began, Plaintiff enrolled her spouse, Matt Seekatz, into the maximum coverage of BP's Group Universal Life (hereinafter "GUL") Insurance program through MetLife.

18.     Under the GUL program, Plaintiff and her spouse completed a Statement of Health on September 12, 2011.

19.     Plaintiff began paying insurance premiums to MetLife, for the insurance coverage, on November 15, 2011.  The insurance premiums were deducted directly from Plaintiff's paychecks.

20.     Plaintiff continued to make bi-monthly payments through April 30, 2012.

21.     On or about May 1, 2012, MetLife provided Plaintiff with a Certificate of Specifications, specifying life insurance coverage in the amount of $250,000.

22.     On or about May 6, 2012, Plaintiff's spouse, Matt Seekatz, passed away.

23.     During the month prior to his death, Matt Seekatz had a medical check-up which was "normal."

Complaint                                                      Page 3 of 7
*Seekatz v. Metropolitan Life Insurance Company*

24.     On August 15, 2012, Plaintiff received a letter from MetLife stating that it anticipated a claim for $250,000 based upon records.

25.     On September 17, 2012, Plaintiff provided MetLife with Matt Seekatz's Death Certificate. At the same time, Plaintiff filed a claim for $250,000 in life insurance benefits under the policy of insurance upon which she was paying premiums.

26.     Plaintiff called MetLife on October 12, 2012, and confirmed MetLife's receipt of the claim for life insurance benefits.

27.     Between November 2011 and May of 2012, MetLife repeatedly confirmed that Plaintiff's life insurance policy provided $250,000 in coverage.

28.     Even post death, MetLife repeatedly confirmed that Plaintiff's life insurance policy provided $250,000 in coverage.

29.     Plaintiff checked BP websites confirming that her husband was insured for $250,000.

30.     On October 31, 2012, MetLife issued a $74.48 refund check to Plaintiff for premiums paid.

31.     On November 20, 2012 MetLife issued a $28.00 refund check to Plaintiff for premiums paid.

32.     On November 21, 2012, MetLife denied Plaintiff's claim for $250,000 in life insurance benefits.

33.     On November 21, 2012, for the first time, MetLife maintained that it had not received a statement of health.

34. In approximately November of 2012, MetLife sent Plaintiff a check in the amount of $20,000.

35. On January 18, 2013, Plaintiff filed an appeal of the denial of benefits.

36. On March 4, 2013, MetLife denied Plaintiff's appeal.

37. Shortly after MetLife's March 4, 2013 denial of Plaintiff's appeal, MetLife advised Plaintiff that she has three (3) years from March 4, 2013, to file a lawsuit for benefits.

## FIRST CAUSE OF ACTION-BREACH OF CONTRACT

38. Plaintiff incorporates by reference all allegations contained in paragraphs 1-37.

39. Plaintiff and Defendant entered into a contract for insurance whereby Defendant charged premiums, Plaintiff paid the premiums, and Defendant agreed to provide life insurance benefits.

40. Insurance contracts are contracts of adhesion. The MetLife life insurance policy was and continues to be a contract of adhesion.

41. Insurance contracts shall be construed against the insurer. The MetLife life insurance policy and the benefits payable under such policy must be construed against MetLife and in favor of Plaintiff.

42. Insurance contracts shall be construed in favor of finding coverage. The MetLife policy must be construed in favor of finding $250,000 in life insurance coverage.

43. Insurance companies owe a fiduciary duty to their insureds. MetLife owed and continues to owe a fiduciary duty to Plaintiff.

44. MetLife breached its contract with Plaintiff by failing to pay the $250,000 benefit paid for with premiums.

45.     As a result of MetLife's breach of contract, Plaintiff suffered damages in the amount of $250,000, minus any benefits actually paid to Plaintiff.

## SECOND CAUSE OF ACTION-TORTIOUS BREACH OF CONTRACT AND A PATTERN OF PRACTICE IN DOING SO, GIVING RISE TO PUNITIVE DAMAGES

46.     Plaintiff incorporates by reference all allegations contained in paragraphs 1-45.

47.     By information and belief, Defendant MetLife has engaged in a pattern and practice of collecting premiums for coverage and then denying payment after claims are made.

48.     By information and belief, Defendant MetLife has engaged in a pattern and practice of collecting premiums for coverage, advising insureds that coverage exists, and then denying benefits after claims are made.

49.     Here, Plaintiff applied for benefits, MetLife accepted the application, MetLife charged premiums, MetLife confirmed that coverage existed, and then denied benefits after a claim for benefits was made.

50.     MetLife willfully and intentionally accepted payments for benefits, although not intending to pay benefits based upon those premiums paid.

51.     MetLife willfully and intentionally deceived Plaintiff into believing that she had $250,000 in life insurance coverage.

52.     MetLife willfully and intentionally breached its contract with Plaintiff by failing to pay $250,000 in life insurance benefits.

53.     MetLife's actions were intentional and were for the purpose of depriving Plaintiff of money.  MetLife's actions were for its financial gain.

54.     Based upon information and belief, as discovery will develop, MetLife engages in this pattern and practice of collecting premiums for life insurance benefits at the $250,000 level and then denying payment of $250,000 after death and upon assertion of claims.

55.     MetLife's conduct is outrageous.

56.     MetLife's tortious breach of contract and pattern of practice is such that punitive damages are warranted.

WHEREFORE, having stated her Complaint, Plaintiff prays for relief against Defendant MetLife as follows:

1.     For general and special damages for Plaintiff in the amount of $250,000;

2.     For pre-judgment and post-judgment interest at the maximum rate allowable by law;

3.     For punitive damages;

4.     For Plaintiff's costs and attorney fees incurred in pursing this action; and

5.     For such other and further relief as the Court may deem just and equitable.

RESPECTFULLY SUBMITTED this 2nd day of February, 2015, in Anchorage, Alaska.

LAW OFFICE OF ROBERT STONE, LLC
Attorney for Plaintiff

s/Robert D. Stone
Robert D. Stone, *Esq*.
Alaska Bar No. 9411128